IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE PEREZ, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-3357 |
| | : | |
| v. | : | |
| | : | |
| TRANS UNION, LLC, and | : | |
| FIRST ADVANTAGE CREDCO, LLC, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Giles, J.                                                                                                                November 27, 2007

      On December 27, 2005, Jose Perez ("Plaintiff") sought to purchase a vehicle from the Popular Ford dealership ("Popular Ford") and asked Popular Ford to help him obtain financing. Popular Ford obtained credit reports about Plaintiff from First Advantage Credco, LLC ("Credco"). The Credco reports, which were compiled from the reports of three credit bureaus,[1] passed on incorrect information to the effect that Plaintiff was deceased and, therefore, had no credit score. The Credco reports also reflected accurate information indicating Mr. Perez had a good credit history. The dealership personnel could see that Mr. Perez was alive and were satisfied that he was who he claimed to be. Mr. Perez claims that Popular Ford then called several banks to seek financing for him. Each of the banks contacted the credit bureaus directly and obtained its own credit report about Plaintiff.

---

[1] The Credco reports reflected the credit data Credco obtained from Equifax, Experian, and Trans Union.

Plaintiff claims five banks denied him credit. Because he wanted to purchase a particular vehicle at that time, he accepted a loan from a sixth bank, Ford Motor Credit, on December 27, 2005, at a rate of 11.65 percent. This rate was considerably higher than the rate for which he believes he would have qualified had there been accurate reporting. Plaintiff claims he was advised by Popular Ford to wait six months for the credit bureaus' error in his credit report to be corrected. On May 31, 2006, Plaintiff returned to Popular Ford and sought the dealership's assistance in refinancing his loan. Popular Ford obtained a second set of Credco reports about Plaintiff. They reflected the same inaccurate information of six months earlier. The credit bureaus were continuing to report that he was deceased and, therefore, had no credit score. Once again, the several banks to which he applied for refinancing contacted the credit bureaus directly to obtain Plaintiff's credit reports, which they received. Plaintiff claims that these lenders denied his request to refinance. Plaintiff finally accepted an offer from Chase, which allowed him to refinance at a rate of 8.65 percent provided he first make a $3,000 down payment. Again, Plaintiff claims the refinance rate was higher than the rate for which he would have qualified if his credit report did not indicate he was deceased and had no credit score. Plaintiff claims he was advised by Popular Ford to bring the incorrect information on his credit report to the attention of the three credit bureaus so that they could create accurate credit reports. On June 6, 2006, Plaintiff wrote to the credit bureaus to inform them of the mistake and demand that they resolve the problem. On July 26, 2006, Popular Ford obtained a third set of credit reports from Credco for Plaintiff's benefit. The third set of Credco reports showed that the credit bureaus had made the changes demanded, apparently in response to Plaintiff's complaints.

On July 28, 2006, Plaintiff filed this Complaint containing, among other things, Fair

Credit Reporting Act (FCRA) claims against Defendants Trans Union, L.L.C. ("Trans Union") and Credco.  Plaintiff alleged that both Defendants repeatedly released inaccurate and derogatory information to third parties regarding his credit history.  Although Plaintiff received a vehicle loan from Ford Motor Credit on December 27, 2005, and refinanced that loan with Chase on May 31, 2006, he seeks damages, alleging that he was refused a number of loans and consumer credit extensions because of Defendants' incorrect reports and that they caused him to have to accept higher interest rates on the loans than he would have obtained otherwise.  Plaintiff also alleges Credco's incorrect reports caused him emotional distress.

On June 12, 2007, all claims against Trans Union were dismissed with prejudice pursuant to a settlement stipulation between the parties.  The remaining parties stipulated that the only pending claim against Credco is for negligent and/or willful violation of FCRA's Reporting Procedures ("§ 1681e(b)"), which require the following:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).  All other claims against Credco were dismissed with prejudice.  Now before the court is Credco's Motion for Summary Judgment (Docket No. 21) along with Plaintiff's Response in Opposition to Summary Judgment (Docket No. 27), Credco's Reply Brief (Docket No. 30), Plaintiff's Surreply Brief (Docket No. 31), Credco's Supplemental Brief (Docket No. 35), Plaintiff's Supplemental Brief (Docket No. 37), and Credco's Reply (Docket No. 38).  Oral argument was accorded.  After consideration of all arguments and submissions, for the reasons set forth below, Defendant's Motion is granted, in part, and denied, in part.

**I. Legal Standard for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). In order to defeat a motion for summary judgment, disputes must be both 1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1127 (3d Cir. 1995).

**II. Reasonable Procedures**

In the third circuit's seminal decision about negligent noncompliance under the FCRA, the court held that "a defendant could prevail on summary judgment only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable." Philbin v. Trans Union Corp., 101 F.3d 957, 965 (3d Cir. 1996). The third circuit explained:

> Reasonable procedures are those that a reasonably prudent person
> would [undertake] under the circumstances. Judging the
> reasonableness of a[ credit reporting] agency's procedures involves

> weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy.

Id. at 963 (citations omitted). Given the disposition in the case, the court found it unnecessary to decide whether it would follow any of three different approaches to FCRA compliance claims used by other circuit courts:

> [1] that a plaintiff must produce some evidence beyond a mere inaccuracy in order to demonstrate the failure to follow reasonable procedures; [2] that the jury may infer the failure to follow reasonable procedures from the mere fact of an inaccuracy; or [3] that upon demonstrating an inaccuracy, the burden shifts to the defendant to prove that reasonable procedures were followed.

Id. at 965 (citations omitted). In Philbin, the court held that "plaintiff has produced sufficient evidence to survive summary judgment on the issue of reasonable procedures merely by demonstrating that there were inaccuracies in the [credit agency's] report." Id. at 966.

Other courts have concluded flatly that "the question of whether a credit reporting agency followed reasonable procedures is reserved for a jury." O'Brien v. Equifax Information Services, 382 F.Supp.2d 733, 736 (E.D.Pa. 2005) (citing Cousin v. Trans Union Corp., 246 F.3d 359, 368 (5th Cir.2001); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir.1991)).

Credco asserts that its procedures were reasonable as a matter of law because it accurately compiled and reported the data provided to it by the three credit bureaus responsible for ascertaining Plaintiff's credit history and related information and assigning him a credit score based upon their investigations. (Def.'s Mot. for Summ. J. 8-11.) In support, Credco cites third circuit dicta from ex post-Philbin case, Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997). There the court said, "We assume for the sake of argument, as the Seventh Circuit

concluded, that the costs of requiring consumer reporting agencies to go beyond the original source of information as an initial matter outweigh any potential benefits of such a requirement." Id. at 224-25.[2] However, Credco's citation omitted the next line of the Cushman opinion. The court continued, "Thus, we can assume that <u>absent any indication that the information is inaccurate</u>, the statute does not mandate such an investigation." Id. at 225 (emphasis added).

     This court concludes, based on Philbin, that Plaintiff here has presented sufficient evidence to survive summary judgment and can proceed to trial on its claim that Credco failed to employ and follow reasonable procedures to assure the accuracy of its credit reports. Credco did reiterate inaccurate information. Credco concedes that it does not independently verify the data it receives from the three credit bureaus; it simply arranges the bureaus' data in the order the client prefers. (Def.'s Mot. for Summ. J. 4-5.) Therefore, the question left for the trier of fact is whether Credco reasonably ought to have appreciated, under the circumstances presented, that there was a <u>material</u> inaccuracy such that a duty arose upon it to do something to correct it or not make a report. If a duty arose, the trier of fact will have to determine whether the type of credit reporting for which Credco was engaged by its customer reasonably required that it do more than accurately reiterate what the credit bureaus were reporting. Plaintiff will have the burden of proving what, at a minimum, would have been reasonable, under the circumstances, including the business costs of any suggested alternative.

     Plaintiff argues the contents of his Credco report, which showed that he was deceased yet his bills were paid on time, were internally contradictory and demonstrated an inaccurracy.

---

[2] This section of the Cushman opinion does not involve a § 1681e(b) claim, although reference was made to a FCRA § 1681i(a) claim (Reinvestigation of Disputed Information) considered in Stevenson v. TRW, Inc., 987 F.2d 288 (5th Cir.1993).

However, as Credco pointed out at oral argument, there is no evidence that Credco was told by Popular Ford that Plaintiff was alive, and there are plausible explanations why a decedent's credit report might show current payments. For example, the payments could have been made before death or paid after death by an executor. These are all considerations fraught with genuine issues of material fact, confirming the Philbin observation that what is reasonable under the statute should ordinarily be left to a jury.

### III. Willful Noncompliance with § 1681e(b)

"The [Fair Credit Reporting] Act creates a private right of action allowing injured consumers to recover any actual damages caused by negligent violations and both actual and punitive damages for willful noncompliance. . . . Under 1996 amendments to § 1681n, a plaintiff may also recover statutory damages of between $100 and $1,000 for willful violations." TRW Inc. v. Andrews, 534 U.S. 19, 23, n.2 (2001) (citing 15 U.S.C. §§ 1681n, 1681o). To show willful noncompliance with § 1681e(b), Plaintiff must show that Defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others, but [Plaintiff] need not show malice or evil motive." Philbin, 101 F.3d at 970 (citations omitted).[3]

Plaintiff has presented no evidence that Credco was willfully noncompliant with § 1681e(b) when it sold credit reports to Popular Ford. Plaintiff stated in his deposition that he

---

[3] Plaintiff argues that the third circuit's recent decision in Whitfield v. Radian Guaranty, Inc., 501 F.3d 262 (3d. Cir. 2007), supports his opposition to summary judgment on his claim of willful noncompliance with § 1681e(b). (Pl.'s Supplemental Br. in Opp'n to Summ. J. 1-2.) This argument lacks merit. Whitfield and the Supreme Court decision on which it relies, Safeco Ins. Co. of Am. v. Burr, 127 S.Ct 227 (2007), involve a section of the FCRA that is not at issue here. See Whitfield, 501 F.3d at 266, 270-71 (referring to 15 U.S.C. §§ 1681a(k)(1)(A), 1681n). In Philbin, the third circuit has plainly set out the standard by which district courts are to evaluate willful noncompliance claims under FCRA § 1681e(b).

did not believe anyone at Credco acted with malice or intent to harm him. (Def.'s Mot. for Summ. J. 3, Ex. 1 at 67-68.) Plaintiff has presented some evidence, which Credco contests, that Credco acted unreasonably, but Plaintiff has presented no evidence that Credco acted <u>intentionally</u> in <u>conscious</u> disregard for his rights. First, Credco did not violate any known right of Plaintiff. The reasonable action to take under the circumstances is not statutorily plain, or is at least debatable. No judicial authority has ruled what credit reporting agencies like Credco must do under the circumstances. Credco had no known duty, given the nature of Popular Ford's request of it, to correct the inaccuracy of credit bureau reports. Both Popular Ford and Plaintiff reasonably wanted to know in advance of bank applications what the prospective lenders would discover from credit bureau reports. Moreover, there is no evidence that Plaintiff or Popular Ford notified Credco of the inaccurate information in its reports, and Plaintiff has presented no evidence that Credco otherwise had independent knowledge of specific inaccurate information. Finally, Credco accurately reported what the three credit bureaus were reporting about him.

      Plaintiff claims there was an apparent contradiction within the reports, because Plaintiff was reported to be deceased and paying his bills on time. (Pl.'s Br. in Opp'n to Summ. J. 7.) Plaintiff seems to argue the alleged contradiction requires the trier of fact to conclude that Credco actually knew Plaintiff's credit reports were inaccurate. (<u>Id</u>.)[4] The <u>Philbin</u> court has defined willful as something that requires more than mere knowledge. To support a claim for a willful § 1681e(b) violation, Plaintiff must provide evidence that Credco was <u>consciously aware</u> that Plaintiff contested the accuracy of the reports and then proceeded to report the inaccuracy

---

[4] Plaintiff concedes that a credit report indicating a consumer is deceased could, correctly, be a sign of fraud. (<u>See id.</u> ("Neither did Credco do anything with respect to Mr. Perez's reports to verify whether there was possible fraud.")).

anyway. Then, there would be evidence that Credco's actions demonstrated deliberate intention to violate Plaintiff's personal rights, and not a negligent act.

Because Plaintiff has presented no evidence that Credco intentionally acted in conscious disregard of Plaintiff's rights when it sold credit reports to Popular Ford, this court grants summary judgment in Credco's favor on Plaintiff's willful noncompliance claim.

### IV. Negligent Noncompliance with § 1681e(b)

#### A. Economic Damages Claims

A case of negligent noncompliance with § 1681e(b) consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry. Philbin, 101 F.3d at 963. "The burden of proving causation remains with the plaintiff at all times and never shifts to the defendant." Id. at 970. While punitive damages are recoverable for willful noncompliance with any provision of the FCRA, only actual damages and attorneys' fees and costs are recoverable for negligent noncompliance. Id. at 962.

After detailed examination of the summary judgment record, this court finds that Plaintiff's claims for economic damages for negligent noncompliance, denial of credit, and damage to credit reputation all fail for lack of rebuttal causation evidence.

Plaintiff has not rebutted Credco's summary judgment evidence that the banks to which he applied for credit obtained their own reports from the various credit bureaus.

Plaintiff has presented no evidence that Credco provided a credit report about Plaintiff to any bank or that Popular Ford itself extended or denied Plaintiff credit. The unrebutted objective

evidence demonstrates conclusively that the banks to which Plaintiff applied for credit contacted the credit bureaus directly for reports about him.[5]

There is no evidence that Popular Ford provided the Credco reports to any bank, and there certainly is no evidence that any bank relied on a Credco report in denying or extending credit.

The only reasonable inference from the fact that banks requested and obtained their own credit reports is that they made their loan decisions based upon information gained independently of Credco.

Considering the absence of evidence that Credco provided a credit report about Plaintiff to any potential lender, there is no genuine issue of material fact to allow Plaintiff's claim for economic damages to go forward, and Credco is entitled to summary judgment as a matter of law on Plaintiff's claims for economic damages, denial of credit, and damage to credit reputation.

---

[5] Plaintiff has presented no objective evidence to rebut the credit reports Defendant entered into evidence or Defendant's reading of those credit reports as indicating that banks made all credit "Inquiries" about Plaintiff directly to the three credit bureaus.  (Def.'s Reply Br. 5, Ex. 1.)  Plaintiff's claim that the Trans Union credit report is hearsay and, therefore, not evidence that can be used at summary judgment lacks merit.  Hearsay evidence in summary judgment exhibits may be considered if the evidence could later be made admissible at trial.  Fed. R. Civ. P. 56(e); Brown v. Muhlenberg Tp., 269 F.3d 205, n.5 (3d Cir. 2001).  Both Plaintiff and Defendant support their summary judgment pleadings with hearsay evidence that later could be made admissible.  There is no dispute about the authenticity of the Trans Union credit report.  In fact, that report is Plaintiff's document, provided to Defendant in discovery, that sets forth Trans Union's official response to Plaintiff's query.  Furthermore, Defendant's reading of the "Inquiries" section of the credit reports is corroborated by direct evidence from Plaintiff's own mouth at his deposition.  (Pl.'s Resp. in Opp'n to Summ. J. Ex. 2 at 77-78.)  Plaintiff has not made a good faith showing that Defendant's reading is erroneous.  Plaintiff's assertion, as propounded in his pleadings and at oral argument, that banks made "Inquiries" of Credco is completely unsubstantiated by the facts.

### B. Emotional Distress Claim

According to the third circuit, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Fed. R. Civ. P. 56(e) reads,

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In other words, once a moving party has supported a motion for summary judgment, the burden shifts to the nonmoving party to present some evidence to refute summary judgment. "[A] party will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (citing Celotex, 477 U.S. at 324). "Only evidence sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case merits consideration beyond the Rule 56 stage." Id. (internal quotation marks omitted).

Plaintiff has not presented evidence to defeat Credco's summary judgment motion on Plaintiff's emotional distress claim. Plaintiff argues that Credco caused him to suffer emotional distress, but Plaintiff has not shown he was subject to emotional distress caused by the Credco reports provided to Popular Ford, independent of distress that he has alleged was caused by the

three reporting credit bureaus.  In fact, Plaintiff stated at his deposition that Popular Ford personnel, fully appreciating that he was alive and who he said he was, never accused him of fraud, concluded there was a mistake in the credit bureaus' reports, and not only went out of their way to help him get a vehicle loan, but gave him suggestions about refinancing and taking steps to cause the credit bureaus to correct their inaccuracies.  (Pl.'s Resp. in Opp'n to Summ. J. Ex. 2 at 25-27, 29-31, 78-80.)  Plaintiff's only evidence of emotional distress is based on what he claims the bank representatives told the Popular Ford salesman after seeing reports from the credit bureaus and his claimed fear of applying to banks for credit. (See, e.g., Pl.'s Resp. in Opp'n to Summ. J. 10-11.)  Inasmuch as Plaintiff has provided no facts supporting his claim that Credco caused him emotional distress, no reasonable inferences may be drawn to support that claim.  Therefore, Credco's Motion for Summary Judgment on Plaintiff's emotional distress claim is granted.

      An appropriate Order follows.